Milligan, J.,
delivered the opinion of the court:
The cause of action presented in this record arises on a written contract made and entered into by the claimant with the Government of the United States, through their officer and agent, Captain James M. Whittemore, on the 1st day of July, 1SG1, whereby the claimant bound himself, under certain stipulations therein mentioned, to furnish to the Government 1,500 cubic yards of such stone from his quarry at North Vernon, in the State of Indiana, as may be required for the erection of the main arsenal building at Indianapolis.
The stone, by the terms of the contract, was “to be of first-quality blue limestone, and to be of such dimensions and in such quantities as may be specified from time to time by the said Captain J. M. Whittemore, commander of the Indianapolis arsenal, or his successor. The quantity of stone to be furnished •to be one thousand five hundred (1,500) cubic yards, more or less. All of said stone to be delivered on the cars of the Madison and Indianapolis Railroad at North Vernon aforesaid, for transportation to Indianapolis. The delivery of said stone to begin two days from date of this contract, and continue thereafter as'fast as may be required for the work on the building, until the whole quantity required is delivered. All of said stone to 1e inspected by the master-builder, or by such person as may be designated by the commanding officer of the Indianapolis arsenal, and to be measured according to the bills of dimensions.
“All these stone are to be delivered by the said party of the first'part; and all claims under this contract, if transferred to another party, are to be by such transfer forfeited, saving the rights of the United States. Payments, in such funds as the Treasury Department may provide, are to be made at the rate *582 of five dollars ($5) per cubic yard, aud in sums not less than five hundred dollars, ($500;) fifteen per cent, of which will be retained until the fulfillment of this contract.”
The claimant avers the fulfillment of his part of the contract, and alleges that he has not been fully paid for the amount of stone delivered and accepted by the defendants.
In his petition he states that he has delivered for the use of the United States 2,308 cubic yards of stone, for which he has been paid, at the contract price, for only 1,211-t cubic yards, leaving unpaid 1,096£ cubic yards. Of this amount he claims that he ought to be paid for only 288J yards at the contract price, and for the remainder — 808 yards — under an implied contract, at the fair and reasonable value of the stone per yard, which he claims to be $14 per cubic yard, making, in the aggregate, $12,754.50.
The essential facts on which the case rests are found to be as follows:
There appear to have been two contracts under which the claimant delivered stone to the defendants. But little is said of the first contract in this record, and nothing is claimed under it. It serves, however, to show that the first stone which were delivered in the fall of 1863 and spring of 1864 were delivered under it; but they have all been paid for, and need not be further noticed in this case, which rests wholly on the second contract hereinbefore referred to.
The delivery of stone under the contract sued on began soon after its date, and continued up until the spring of 1866. The stone were all “ dimension stone,” and gotten out at the quarry according to the bills of dimension furnished by Mr. Key, the foreman of the arsenal works. These bills were furnished to Thomas Fall or Thomas Tost, who were sent to the quarry by James M. Whittemore, commander of the Indianapolis arsenal, as inspecting and receiving agents of the Government; and every stone, before it was loaded on the cars at the quarry, was measured, numbered, and inspected as to its quality by one or the other of these gentlemen. The United States paid the freight on the stone from the quarry to the arsenal building, where they were again inspected and measured by the master-builder, or some one appointed thereto by the officer in command at the arsenal. Some were rejected on inspection at the arsenal under both the first and second contracts. Those *583 rejected under tbe first were afterward paid for by tbe Government ; but there is no proof which shows that any portion of the stone which were rejected under the second contract have ever been paid for.
The precise quantity of stone shipped by the defendants from the quarry does not appear; nor is it distinctly shown how many cubic yards were rejected under either contract at the arsenal. It does, however, appear by the books of the railroad company that prior to the 6th of July, 1864, there were shipped under the first contract 178 car-loads, and subsequent thereto, under the second contract, 442 loads, making in all 620.
Every stone that was shipped from the quarry to the arsenal grounds was inspected by Tost or Fall before it was loaded on the cars; and if by mistake or accident any one was put on the cars which was not fully up to the specifications, it was rejected and thrown off the cars and another put in its place. Each car-load, on an average, contained 4£ cubic yards of stone in gross.
The claimant has been allowed and paid for 1,224J cubic yards; and on the last and final payment he executed the following receipt:
Dato of purchase. Appropriations — arsenals. Amount. Remarks, shewing the objectsofthepurchaso or expenditure.
I860. April 21 2£ yards stone, at $5. 15 per cent, reserved on former hills, it being in full of all accounts to date on stone, according to contract. Total amount. §12 50 812 75 825 25 For main building
I certify that the above account is correct and just.
JAS. M. ’WHITTEMORE,

Ca/pt & JBvt. Maj. Ord. Com'd'g.

Received at Indianapolis this 21si day of April, 1866, from William Y. Wiley, M. 8. K., the sum of eight hundred and twenty-five dollars twenty-five cents, in full of the above account.
GALLUS KEROHNER.
On the foregoing facts only two questions are raised by the defendants’ counsel: First, it is insisted that the receipt found in the record concludes the claimant from all further recovery in this action; and, second, if be is ,not concluded by the receipt, *584 bebas been fully paid for all tbe stone delivered and accepted by tbe Government.
1. In answer to tbe first question, it is readily admitted, if tbe claimant received payment and executed tbe receipt presented in tbe record, under a fair and well-understood compromise between bim and tbe defendants, be is concluded thereby, and can take nothing by bis subsequent action. But there do not appear to have been any disputed facts respecting it; and tbe record leaves no doubt that it was understood by both parties at tbe time of its execution that tbe receipt covered nothing but tbe amount of stone which actually went into tbe building. Nothing was said by the parties, or intended by tbe receipt, which affects tbe amount of stone1 that was received at .the quarry, and afterward rejected at tbe arsenal. Tbe receipt is, therefore, final and conclusive on tbe claimant as to tbe matter about which it purports to speak, but it does not constitute a bar to tbe claimant’s right to recover for tbe stone received at tbe quarry, and subsequently rejected on tbe arsenal grounds.
2. Tbe second ground of objection presents a mixed question of law and fact, which involves a fair and just interpretation of tbe contract, and an application of tbe facts to such interpretation.
In respect to tbe first branch of this inquiry, it may be remarked that tbe only question of construction arising on tbe contract is as to tbe place where the stone was to be delivered. Tbe contract itself removes all difficulty on this point. It declares that “ all of said stone to be delivered on tbe cars at North Vernon aforesaid for transportation to Indianapolis.” Tbe place of delivery is, therefore, fixed at North Vernon, where tbe quarry is located; and tbe subsequent clause in tbe contract, which requires tbe stone to be inspected “by tbe master-builder, or by such person as may be designated by tbe commanding officer of tbe Indianapolis arsenal,” in no sense conflicts with this view of tbe contract. Tbe inspection was made at. tbe quarry, before shipment, by tbe authorized agents of tbe commander of tbe arsenal; and when tbe claimant bad furnished the stone there, according to tbe bills of dimensions, and they were received and loaded on tbe cars at North Vernon, be bad done all tbe contract required bim to do, and from that time forth tbe stone were at tbe risk of the defendants, and they liable to pay for them.
*585 The precise quantity of stone thus delivered is not shown by the proof, but it abundantly appears that he delivered more than the 1,500 cubic yards required of him in the contract. The books of the railroad company over whose line of road the rock were shipped show that 442 car-loads were shipped under the second contract; and the proof establishes that each car-load averaged, in gross, 4£ cubic yards, making in the aggregate 1,989 yards in gross. The claimant has been paid for 1,224J cubic yards, and the balance remains unpaid.
But this result rests on the average estimate in gross of each car-load shipped from the quarry, and it is impossible for the court to fix, with absolute accuracy, the specific quantity of stone delivered by the claimant. But vague as the proof is in this respect, it is certain that he delivered under this contract the full amount of 1,500 yards called for in it; and for this amount, less the 1,224],- yards for which he has been paid, he should recover.
The stone delivered were all “ dimension stone,” and by the terms of the contract they were to be paid for at $5 per cubic yard, which gives for the 275],- yards still unpaid for the sum of $1,377.50, for which judgment will be entered.
Nott and Peck, J. J., agreed with the opinion read by Judge Milligan,
Drake, Ch. J., dissented.